*486 WALTERS, J.,
dissenting.
I respectfully dissent. For the reasons that I explain today in State v. Backstrand, 354 Or 392, 418, 313 P3d 1084 (2013) (Walters, J., concurring in the judgment), it is my view that, when an officer asks for and obtains an individual’s identification in circumstances in which a reasonable person would believe that he or she is being subjected to a criminal investigation and therefore must stop, respond, and remain until the immediate investigation is complete, the officer effects a seizure under Article I, section 9, of the Oregon Constitution.
In this case, an officer approached defendant, questioned him about whether he was on probation, and obtained and checked his identification. Then the officer approached defendant a second time. The officer confirmed to defendant that defendant was not on probation, but signaled that the officer’s investigation was not complete: With another officer present, the officer asked defendant for consent to search and continued to question defendant, focusing his inquiry on the items in defendant’s pockets. I agree with Justice Brewer that, when viewed independently, each of those two encounters were seizures under Article I, section 9, of the Oregon Constitution. 354 Or at 474, 484 (Brewer, J., concurring in the judgment of the court).[1]
I also think that it is appropriate to view those events in combination and that, under the “totality of the circumstances” test, the officer seized defendant. In that light, the correct result in this case is determined by this court’s decision in State v. Hall, 339 Or 7,115 P3d 908 (2005). This court has not overruled Hall and, although there admittedly is some tension between Hall and the court’s decision in State v. Ashbaugh, 349 Or 297, 244 P3d 360 (2010), I do not *487 see that the decision in this case is controlled by Ashbaugh and not by Hall.
The majority takes the position that, in Hall, “none of the officer’s actions (hailing defendant, asking for identification, checking that identification, asking about weapons and drugs, asking for consent) individually was sufficient to amount to a stop,” but that in combination “those actions crossed over the line and transformed what began as a mere encounter into a stop.” 354 Or at 473. The majority then says that no similar “alchemy” occurred here because, considered in combination, the acts in this case “were simply acts that occurred sequentially.” Id. To my eye, the line the majority draws between “mere” and “more,” or between transforma-tive and sequential, is drawn in invisible ink.
In this case, defendant was not a pedestrian or a bystander. Defendant was a passenger in a car who reasonably could not go on his way until the driver of the car was ready and able to leave. See State v. Thompkin, 341 Or 368, 378-79, 143 P3d 530 (2006) (passenger in car was seized because, under totality of circumstances, her liberty was restrained). The time period during which the officers conducted their investigation of defendant and the driver was not brief. During part of the time that defendant was questioned, a second “cover” officer was present. The officer who questioned defendant asked him for consent to search and, like the officer in Hall, did nothing to dispel the notion that had been created by the officer’s request for and check of defendant’s identification that defendant was under investigation and not free to leave. See Hall, 339 Or at 19 (officer “did nothing to dispel what would have been an objectively reasonable belief that [the] defendant was restrained from leaving”). I can understand how the officer’s show of authority in this case was more restraining than was the show of authority considered in Hall, but I cannot understand why the officer’s acts in this case were not at least sufficient to transform the encounter from a conversation into a stop.
The public, the police, and the trial courts deserve greater guidance from this court. “[S]ome advocates” and the Court of Appeals may have been mistaken in understanding the rule from Hall as a per se rule that whenever *488 the police request and obtain an individual’s identification, they seize the individual. 354 Or at 472. However, the rule that I take from Hall is that, when police officers request and obtain an individual’s identification in a circumstance in which a reasonable person would believe that he or she is the subject of a criminal investigation, the officers exercise authority that reasonably conveys that the individual must stop, respond, and remain until the investigation is complete, and that the officers thereby effect a seizure. That understanding does not preclude police officers from seizing individuals; it requires only that they have a constitutionally sufficient justification for doing so.
Because the majority holds that Article I, section 9, does not apply to these facts, I respectfully dissent.
Baldwin, J., joins in this dissenting opinion.

 I especially agree with and appreciate Justice Brewer’s discussion of the officer’s request to search and Justice Brewer’s comments about whether such a request must be constitutionally justified or reasonably related to a stop which is itself constitutionally justified. 354 Or at 484-85. In my view, this court has not yet decided those questions. See State v. Watson, 353 Or 768, 784 n 18, 305 P3d 94 (2013) (finding it unnecessary to address whether officer’s inquiries, including request to search, made during the pendency of a valid seizure implicate Article I, section 9).